IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD MORROW, | ) |
| Plaintiff | ) ) ) |
| v. | ) NO. 3-16-cv-1953 ) JUDGE TRAUGER |
| COMMUNITY HEALTH SYSTEMS, INC., et al. | ) ) ) |
| Defendants | ) |

**MEMORANDUM**

Pending before the court is Community Health Systems, Inc.'s Motion to Dismiss First Amended Complaint or, in the Alternative, to Compel Arbitration (Docket No. 74). Plaintiff has filed a brief in opposition to the Motion (Docket No. 78), and CHS has filed a Reply (Docket No. 80) and supplemental authority (Docket No. 81). For the reasons stated herein, the Motion to Dismiss will be granted in part and denied in part, and the Motion to Compel Arbitration will be denied.

INTRODUCTION

The First Amended Complaint in this purported class action (Docket No. 73) alleges that Community Health Systems, Inc. ("CHS") and its direct and indirect subsidiaries ("affiliates") have a policy and practice of breaching their provider contracts with health insurers, causing monetary damages to third-party beneficiaries of those contracts, including Plaintiff and other potential class members. Plaintiff contends that CHS and its affiliates are required by their provider contracts to submit the bills of insured patients to their respective health insurance carriers and to accept the insurer's contractually agreed-upon discounted payment as *full payment* for those bills, minus any co-pays or deductibles owed by the patients.

Instead, Plaintiff asserts, the policies and practices of CHS and its affiliates require CHS-owned hospitals to either (1) refuse to submit the medical bills to the patient's health insurance carrier; (2) submit the medical bills to the patient's health insurance carrier, but then refund the insurer's discounted payment and try to collect a larger payment from another source, usually the patient or a third-party tortfeasor; or (3) submit the medical bills to the patient's health insurance carrier, keep the insurer's discounted payment, and then still try to collect the balance of the undiscounted charges from another source, including the patient.

Plaintiff asserts that he received emergency medical care at South Baldwin Regional Medical Center ("South Baldwin"), an Alabama hospital owned and operated by CHS, after a motor vehicle accident in May of 2015. Plaintiff contends that his health insurer, Blue Cross Blue Shield of Alabama ("BCBS"), paid the hospital for services rendered to him, at the discounted rate mandated by the provider contract between South Baldwin and BCBS. He avers that, upon realizing that Plaintiff's injuries were the result of a motor vehicle accident, South Baldwin (per CHS's policy) refunded BCBS's discounted payment and billed Plaintiff for the full, undiscounted amount. Plaintiff alleges that Defendants began contacting Plaintiff's attorney, attempting to collect the full, undiscounted balance of the hospital bill from any settlement Plaintiff made with the other driver's liability insurance carrier. Plaintiff asserts that, because South Baldwin breached its contractual obligation to accept BCBS' discounted payment (plus Plaintiff's co-pay) as full payment for its hospital charges, he has been unable to settle with the other driver and has suffered monetary losses.

Plaintiff has asserted claims for breach of contract, unjust enrichment, intentional interference with contractual relations, and civil conspiracy. Defendant CHS has moved to dismiss the First Amended Complaint, arguing that (1) neither Plaintiff nor CHS is a party to the contract that Plaintiff

alleges was breached, and the contract expressly disclaims any intent to create third-party beneficiaries; (2) Plaintiff has not alleged that he provided any benefit or payment to CHS, so his unjust enrichment claim fails; (3) the intentional interference claim fails because Plaintiff is not a third-party beneficiary to the contract, and CHS is privileged as a matter of law to interfere with the contracts of its subsidiary; and (4) Plaintiff's civil conspiracy claim fails because there is no actionable predicate tort and because CHS cannot conspire with its own subsidiaries as a matter of law.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## BREACH OF CONTRACT

Plaintiff alleges that Defendants breached the Participating Hospital Contract ("the Contract") between BCBS and South Baldwin, which is in the record at Docket No. 24-1. CHS argues that

3

Plaintiff has no standing to sue under the Contract because he is not a party to it or a third-party beneficiary thereof. It is undisputed that Plaintiff is not a party to the Contract.[1]

To be a third-party beneficiary of a contract, Alabama law[2] requires that the contracting parties intended, at the time the contract was created, to bestow a direct benefit on the third party. *Brown v. Gadsden Regional Med. Ctr.*, 2017 WL 4122462 at * 3 (N.D. Ala. Sept. 18, 2017) (citing *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002)). To recover as a third-party beneficiary, a claimant must show that (1) the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) the claimant was the intended beneficiary of the contract; and (3) the contract was breached. *Bernals, Inc. v. Kessler-Greystone, LLC*, 70 So.3d 315, 320 (Ala. 2011). Generally, a court examines the contract documents as well as the surrounding circumstances in resolving this issue. But, in Alabama, when "two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy." *Brown* at * 3; *Ex parte Cintas Corp.*, 958 So.2d 330, 333 (Ala. 2006).

The Contract provides as follows: "Nothing herein contained shall be construed to confer any claim, right, action, or cause of action upon any Member or other person, group of persons, firm, corporation, or public officer other than the Parties signing this Contract." Docket No. 24-1 at 26 (¶ 9.1). As noted, "the Parties signing the Contract" are BCBS and South Baldwin, not Plaintiff or

---

[1] There are actually two contracts attached at Docket No. 24-1, one titled "Participating Hospital Contract," dated July 1, 1991, and one titled "Preferred Outpatient Facility Contract," dated October 1, 1999. Both contracts are between BCBS and South Baldwin.

[2] The Contract at issue provides that it is to be governed by Alabama law. Docket No. 24-1 at 12 (Article VIII, ¶ 4) and at 26 (¶ 9.4).

CHS. "Member" is defined in the Contract as "any person who is entitled to receive Health Care Services[3] under and in accordance with the provisions of a contract or agreement executed by [BCBS] to provide or administer such Services to such person." *Id*. at 3 (¶ 1).

Plaintiff argues that certain provisions of the Contract specifically confer a direct benefit upon insureds, such as Plaintiff, and therefore conflict with the above-quoted "no-third-party-beneficiary" provision. The provisions Plaintiff references, however, do not confer a direct benefit upon insureds. The first cited provision (Docket No. 24-1, p.16, ¶ 1.3) states that the objective of the Contract is the prospective financing of broad benefits of quality medical care at a lower cost *to the public* for medical services. The court does not construe this provision as conferring a direct benefit upon Plaintiff, particularly in light of the "no-third-party-beneficiary" provision cited above. The other cited provisions (*Id*., pp. 19-20, ¶¶ 4.3 and 4.4) also do not confer a direct benefit upon Plaintiff. Those provisions state that the hospital may bill the insured for any co-payments and co-insurance amounts applicable under the insured's Benefit Agreement,[4] that the total amount payable by both the insured and BCBS shall not exceed the agreed, discounted amount payable for such services, and that the hospital may not bill the insureds directly for amounts due from BCBS.

Plaintiff contends that "many jurisdictions" have held that such insurance contracts are intended to directly benefit insureds such as Plaintiff. Notably absent from Plaintiff's citations,

---

[3] "Health Care Services" is defined as "those services which a Member is entitled to receive from the Hospital under and in accordance with the provisions of [BCBS'] contract or agreement with such Member. Docket No. 24-1 at 3 (¶ 2).

[4] "Benefit Agreement" is defined as the written agreement entered into by BCBS with a group or organization or person under which BCBS provides, indemnifies against, or administers health care benefits. Docket No. 24-1 at 17 (¶ 2.1).

5

however, are any cases from Alabama.[5] And under Alabama law, as recently as September 18, 2017, courts have held that a person cannot be a third-party beneficiary if there is explicit language in the contract stating otherwise. *Brown*, 2017 WL 4122462 at * 3.

The unambiguous language of the Contract denies non-signatories any rights to enforce the Contract. It specifically provides that the Contract does not confer any claim, right, action, or cause of action upon anyone other than BCBS and South Baldwin. The court finds that, under Alabama law, Plaintiff is not a third-party beneficiary of BCBS' contract with South Baldwin. Therefore, Plaintiff has no standing to bring a claim for breach of contract as a third-party beneficiary.

Plaintiff argues that CHS is directly liable for South Baldwin's actions because CHS developed and enforced the policies and practices which required South Baldwin to breach the Contract with BCBS. Even if CHS were directly liable under the Contract, however, Plaintiff still has no standing to allege breach, because he is neither a party to, nor a third-party beneficiary of, that Contract. Therefore, Plaintiff has failed to state a claim for breach of contract against CHS, and that claim will be dismissed.

## UNJUST ENRICHMENT

An unjust enrichment claim is an alternative theory of recovery and, therefore, is available only when there is no existing, enforceable contract between the parties covering the same subject matter. *Smith v. Hi-Speed, Inc.*, __ S.W.3d __, 2016 WL 4546057 at * 15-16 (Tenn. Ct. App. Aug. 30, 2016); *Brown*, 2017 WL 4122462 at * 4.

---

[5] Similarly, Plaintiff's citations to support his argument that "various courts" use the "specific provisions trump general provisions" and "earlier provisions trump later provisions" rules of contract construction notably do not include any Alabama cases.

Under Alabama law,[6] in order for a plaintiff to prevail on a claim of unjust enrichment, he must show that the defendant holds money that, in equity and good conscience, belongs to the plaintiff or holds money that was improperly paid to the defendant because of mistake or fraud. *Tate v. Water Works and Sewer Bd. of the City of Oxford*, 217 So.3d 906, 919 (Ala. Civ. App. 2016). Retention of a benefit is unjust if (1) the donor of the benefit acted under a mistake of fact or in mis-reliance on a right or duty or (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion or abuse of a confidential relationship. *Matador Holdings, Inc. v. Hopo Realty Investments, LLC*, 77 So.3d 139, 146 (Ala. 2011); *see also United States v. Urioste*, 2017 WL 117760 at * 9 (N.D. Ala. Jan. 12, 2017) (to prevail on unjust enrichment claim, plaintiff must establish mistake/mis-reliance by the donor or wrongful conduct by the recipient).

Under Tennessee law, the elements of an unjust enrichment claim are (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation of that benefit by the defendant, and (3) acceptance of the benefit under such circumstances that it would be inequitable for him or her to retain the benefit without payment of the value thereof. *Miller v. Driver*, 2012 WL 2131230 at * 14 (M.D. Tenn. June 12, 2012) (citing *United States v. Goforth*, 465 F.3d 730, 733-34 (6th Cir. 2006)). To establish an unjust enrichment claim, a plaintiff must have conferred a benefit upon the defendant. *Perry v. The American Tobacco Co., Inc.*, 324 F.3d 845, 851 (6th Cir. 2003); *Miller* at * 14. A plaintiff may recover for unjust enrichment against a defendant who receives any benefit from the plaintiff if the defendant's retention of the benefit would be unjust. *Id*. A benefit is any form of advantage that has a measurable value, including the advantage of being saved from an expense or

---

[6] The parties have not addressed which state's laws on unjust enrichment apply in this case, but the court finds that the result is the same under both and will address both.

7

loss. *Noel v. Metropolitan Gov't of Nashville and Davidson County*, 2014 WL 317695 at * 4 (M.D. Tenn. Jan. 28, 2014).

Defendant maintains that the unjust enrichment claim against it must be dismissed because Plaintiff has not sufficiently alleged that he paid CHS any money or that he conferred, either directly or indirectly, any benefit upon CHS. Defendant contends that Plaintiff has failed to allege that CHS retains any money that rightfully belongs to Plaintiff.

The First Amended Complaint (Docket No. 73) alleges that Defendants knowingly obtained payment for the undiscounted medical bills (indirectly from Plaintiff and purported class members) through third-party tort recoveries and automobile insurance benefits and/or directly from Plaintiff and the purported class members. Plaintiff also alleges that Defendants received, accepted and retained the benefits of money to which they were not entitled. Plaintiff argues that Defendants unjustly retained those benefits at the expense of Plaintiff and others because those benefits would have rightfully inured to the financial benefit of Plaintiff and potential class members. Plaintiff avers that all Defendants, including CHS, received a portion of the funds obtained from this practice and derived considerable profit from this business model.

Under Alabama law, therefore, Plaintiff has sufficiently alleged, for purposes of a motion to dismiss, that he and the purported class members conferred a benefit, directly and indirectly, upon Defendants. Plaintiff has also sufficiently alleged that CHS received that benefit - more money than it had agreed, in its provider contracts, to accept for the medical services rendered - and Plaintiff has sufficiently alleged that the money was improperly paid to CHS and its affiliates because of Defendants' wrongful conduct. Plaintiff has also sufficiently alleged that CHS knowingly received

8

and retained the benefits that, in equity and good conscience, belong to Plaintiff and potential class members.

Similarly, under Tennessee law, Plaintiff has sufficiently alleged that a benefit was conferred upon CHS from Plaintiff's and others' tort recoveries and/or health insurance carriers, that Defendant knowingly received and appreciated that benefit, and that it would be inequitable for CHS to retain the wrongfully-obtained money. Plaintiff has sufficiently alleged that Defendants received "an advantage that has a measurable value, including the advantage of being saved from an expense or loss." *See Noel*, 2014 WL 317695 at * 4.

As noted above, on this Motion to Dismiss, the court must accept the allegations of the First Amended Complaint as true. For purposes of this Motion, Plaintiff has sufficiently alleged, under Alabama and Tennessee law, an unjust enrichment claim, and that claim will not be dismissed.

INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Because the Contract at issue is governed by Alabama law, the court will analyze this claim under Alabama law. The result is not different, however, under Tennessee law.[7]

In Alabama, a claim for tortious interference with contractual relations requires proof of five elements: (1) the existence of an enforceable contract; (2) the defendant's knowledge of the contract; (3) the fact that the defendant is a stranger to the contract; (4) the defendant's intentional interference with the contract; and (5) damage to the plaintiff. *Fuel-From-Waste, LLC v. Gold Coast Commodities, Inc.*, 2017 WL 75754 at * 4 (N.D. Ala. Jan. 9, 2017). In other words, Plaintiff must show the existence of a contract, of which CHS knew, to which CHS was a stranger, with which

---

[7] Tennessee recognizes both a statutory and a common law cause of action for tortious interference with, or inducement of, breach of contract. Tenn. Code Ann. § 47-50-109; *Jimenez v. Vanderbilt Landscaping, LLC*, 2011 WL 3027190 at * 4 (M.D. Tenn. July 25, 2011).

CHS intentionally interfered, and damage to Plaintiff. *King v. CVS Caremark Corp.*, 2 F.Supp.3d 1252, 1270 (N.D. Ala. 2014); *White Sands Group, LLC v. PRS II, LLC*, 32 So.3d 5, 14 (Ala. 2009).

The First Amended Complaint alleges that Defendants intentionally interfered with the known, enforceable contracts between CHS-affiliated hospitals and health insurance carriers, causing loss to Plaintiff and potential class members. CHS contends that Plaintiff's claim must be dismissed because Plaintiff is neither a party to, nor a third-party beneficiary of, the subject Contract and because CHS is, in any event, privileged to interfere with the contracts of its subsidiaries.

The court has found that Plaintiff is neither a party to, nor a third-party beneficiary of, the Contract. A claim of tortious interference with a contractual relationship presupposes the existence of an enforceable contract, so Plaintiff has no standing to bring this claim. *Kirby's Spectrum Collision, Inc. v. Government Employees Ins. Co.*, 744 F.Supp.2d 1220, 1231 (S.D. Ala. 2010); *Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.*, 619 So.2d 1328, 1329 (Ala. 1993). The court need not reach CHS' other argument with regard to this issue. Accordingly, Plaintiff's tortious interference with contractual relationship claim will be dismissed.

## CIVIL CONSPIRACY

Plaintiff alleges that the Defendants agreed among themselves and acted in concert to intentionally interfere with the contracts between the CHS-affiliated hospitals and the health insurers of Plaintiff and potential class members. Because the court has found that Defendants did not tortiously interfere with those contractual relations, Plaintiff's conspiracy claim will be dismissed.

## MOTION TO COMPEL ARBITRATION

CHS bases its argument to compel arbitration on a provision of the Contract. Because neither Plaintiff nor CHS is a party to that contract, and because the only remaining claim depends upon there being *no* contract, CHS' Motion to Compel Arbitration is moot.

CONCLUSION

For the preceding reasons, CHS' Motion to Dismiss will be GRANTED in part and DENIED in part. Plaintiff's claims for breach of contract, intentional interference with contractual relations, and civil conspiracy will be dismissed. CHS' Motion to Compel Arbitration is DENIED as moot.

ENTER this 17th day of October 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE